IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SONNI VICKERS,<br><br>    *Defendant.* | CRIMINAL ACTION NO.<br>3:22-cr-00009-TES-CHW-11 |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Sonni Vickers' Motion to Suppress [Doc. 400] for which the Court held a hearing on May 16, 2023. For the reasons discussed below and as announced to the parties during the hearing, the Court **DENIES** Defendant Vickers' Motion to Suppress. The pertinent facts are as follows.

A.    **Factual Background**

Pursuant to co-Defendant Justin Cape's Fourth Amendment Waiver from a previous state-court conviction out of Madison County, Georgia, deputies with the Athens-Clarke County Police Department searched his and Defendant Vickers' residence on September 9, 2021. *See* [Doc. 404, p. 2]. According to Sergeant Lee Walker's testimony, at some point, as the search began, another deputy on the scene took Vickers' phone so that she could not make any calls during the search. As he walked through the residence with Vickers, he noticed crystal-like substances in two rooms,

which he suspected to be methamphetamine.[1]

Since Vickers lived there and the suspected meth was in plain view, Sgt. Walker told her that he wanted to see the contents of her phone to essentially corroborate what she had told him since his arrival about what she knew of Cape's drug distribution activities. [Doc. 404, pp. 3–4]. Succinctly put, Vickers insisted that she wasn't involved. [*Id.* at p. 9]. Further, Sgt. Walker testified that at no point during the search of Vickers and Cape's residence did he ever place Vickers in handcuffs, but he was clear that she wasn't allowed to walk away. [*Id.* at p. 4]. Since Vickers was, for all intents and purposes, "temporarily detained," she was Mirandized. [*Id.*].

In its Response [Doc. 404], the Government argues (consistent with Sgt. Walker's testimony) that Sgt. Walker told Vickers that he could go through her phone one of two ways. [*Id.* at p. 5]. Vickers could either give her consent or Sgt. Walker informed her that he could search her phone after the lengthier process of obtaining a warrant to do so. [*Id.*]. Specifically, Sgt. Walker told Vickers he was "going to go through [her] phone one way or the other." [Doc. 400, p. 1]; *see also* [Doc. 406 (Government's Exhibit Item #1)]. Rather than wait and take the chance that a warrant wouldn't be obtained, Sgt. Walker

---

[1] Although the "Acknowledgment" portion of the Final Disposition regarding Cape's state-court conviction is unsigned, Cape undoubtedly knew of his Fourth Amendment Waiver by virtue of it being part of his sentence. [Doc. 404-2, pp. 1–2, 4]. To the extent Vickers uses the lack of Cape's signature as means to invalidate *Cape's* Fourth Amendment Waiver, she does not have standing to do so. Regardless of whether Vickers was even aware of Cape's Fourth Amendment Waiver, she—as a joint occupier of her and Cape's residence—consented to its search when she walked through it with Sgt. Walker. [Doc. 404, p. 8 (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974))]; *see also* [Doc. 404-3].

2

testified that after hearing her two options (during what can only be described as a calm and uneventful investigation and residence search), Vickers consented to a search and gave him the passcode to her phone. And, although she later memorialized her consent in writing, it is the very brief, first look into the contents of her phone that she relies on in support of her suppression efforts. *See, e.g.*, [Doc. 404-1].

After obtaining what was unquestionably clear consent, Sgt. Walker first looked at Vickers' text messages while still at her residence. During this first look, Sgt. Walker testified that he saw texts regarding drug-distribution activity. To be sure, based on Sgt. Walker's account of events, Vickers was well within her constitutional rights to make him obtain a warrant before going through her phone, but she didn't. And, after providing the phone's passcode—and thus, her consent—she never withdrew it. Finally, as they discussed during the search of the residence, Vickers met with Sgt. Walker later that day to retrieve her phone once its contents had been downloaded. [Doc. 404, pp. 4–5].

B.     <u>Discussion</u>

Based on the totality of circumstances, the Court determines that Sgt. Walker's statement that he was "going to go through [her] phone one way or the other" is not a misrepresentation or one made to coerce Vickers' into providing her consent. [*Id.* at p. 9 (citing *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001))]. He simply told her the truth—that he could go through the phone with her consent or with a search

3

warrant. While it is true that he could not have been absolutely certain that a neutral and detached magistrate would have granted him that warrant, he didn't have to be given that the search of the residence was done pursuant to Cape's Fourth Amendment Waiver and the fact that the meth was in plain view. While Sgt. Walker testified that he believed he'd be able to obtain a search warrant, Vickers could have insisted that he go through the process; thus, taking the chance that a search warrant wouldn't be issued with respect to her phone. But, she didn't.

From the Court's observation of Sgt. Walker while testifying and review of the audio recordings, the Court finds his assertion that his encounter with Vickers was nothing less than cordial to be credible. *See United States v. Gause*, No. 22-11685, 2023 WL 2194295, at *2 (11th Cir. 2023) (citing *United States v. Aldridge*, 719 F.2d 368, 373 (11th Cir. 1983)). It's clear that Sgt. Walker never raised his voice, threatened, intimidated, or otherwise browbeat her into giving her consent. [Doc. 404, p. 9]. From that, the Court finds that Vickers did not provide consent while under any form of duress. She simply cooperated with Sgt. Walker, even going so far as to tell him that she would do "whatever is easiest for him" to search her phone. [*Id.* at p. 5]. Vickers freely consented to the search, and when such given consent is "voluntary" and "the product of an 'essentially free and unconstrained choice[,]'" any resulting search is constitutional. *Purcell*, 236 F.3d at 1281 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). Thus, the "evidence derived from the search of [Vickers'] . . . phone" cannot be

4

suppressed. [Doc. 400, p. 1].

C.    **Conclusion**

Accordingly, the Court **DENIES** Defendant Sonni Vickers' Motion to Suppress [Doc. 400].

**SO ORDERED**, this 17th day of May, 2023.

                                              S/ Tilman E. Self, III
                                              **TILMAN E. SELF, III, JUDGE**
                                              **UNITED STATES DISTRICT COURT**